# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**COLONIAL OAKS ASSISTED LIVING LAFAYETTE**

**CASE NO. 6:18-CV-01606**

**VERSUS**

**JUDGE DOUGHTY**

**HANNIE DEVELOPMENT INC**

**MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the Court is the Rule 12(b)(6) Motion to Dismiss filed on behalf of Defendant, Nicol Hannie (Rec. Doc. 10). Plaintiffs, Colonial Oaks Assisted Living Lafayette, LLC ("COALL") and Colonial Oaks Memory Care Lafayette, LLC ("COMCL") (collectively, "the Plaintiff Buyers"), oppose the Motion (Rec. Doc. 17), and Nicol Hannie has replied (Rec. Doc. 20). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Nicol Hannie's Motion be DENIED WITHOUT PREJUDICE insofar as the Court finds the Complaint does not presently state a sufficient claim for fraud against Nicol Hannie, however, given the plaintffs' request to amend,  the Court further recommends that the Plaintiff

Buyers be given fifteen (15) days to amend the Complaint to allege fraud claims against Nicol, Maurice, and Joyce Hannie.

## **Factual Background**

This suit arises out of the sale of Rosewood Retirement and Assisted Living Center ("Rosewood") from Hannie Development Inc. ("HDI") to Seniors Investments II, LLC ("Seniors"), and the sale of the Cedar Crest Personal Memory Center ("Cedar Crest") from Cedar Crest, LLC ("CC") to Seniors, both of which occurred on March 31, 2016. Seniors is apparently affiliated with the Colonial Oaks Plaintiff entities, as Plaintiffs allege that Colonial Oaks Assisted Living Lafayette, LLC ("COALL") purchased Rosewood and that Colonial Oaks Memory Care Lafayette, LLC ("COMCL") purchased Cedar Crest. (Rec. Doc. 1, ¶10). The Sellers and Buyers entered into Asset Purchase Agreements ("APA") for each facility (HDI and COALL for Rosewood; CC and COMCL for Cedar Crest). (Rosewood APA at Rec. Doc. 1-2; Cedar Crest APA at Rec. Doc. 1-3). The Sellers and Buyers also executed Holdback Escrow Agreements ("HEA") for each facility. (Rosewood HEA at Rec. Doc. 1-4; Cedar Crest HEA at Rec. Doc. 1-5). The pertinent provisions of the APAs and HEAs are practically identical for each facility.

According to the Complaint, the Buyers closed on both APA's (dated March 31, 2019) and began operating both facilities on December 1, 2016. (Rec. Doc. 1,

¶17). Shortly after closing, the Buyers alleged they discovered that a substantial proportion of the residents at Rosewood were incapable of understanding what their medications were, what they were for, and/or the need for the medication, such that, under applicable state regulations, they were not considered appropriate for self-administration of medications, and licensed nursing staff was required to assist those residents with medication administration. (Rec. Doc. 1, ¶18). Thus, the Plaintiff Buyers alleged they were required to increase their nursing staff. They further alleged that Nicol Hannie, director of Rosewood, was aware prior to the sale that HDI needed to hire licensed nursing staff in order to come into compliance with the self-administration regulation. (Rec. Doc. 1, ¶20). The Plaintiff Buyers further alleged that Joyce Hannie had, in 2016, hired a nurse to provide medication administration services, but the nurse was only employed for a short period of time, and that Joyce Hannie and Nicol Hannie made a conscious decision not to replace her. According to the Complaint, facility personnel raised the need to hire a new nursing staff with Nicol Hannie, and that he acknowledged same, but commented that HDI would be selling the facility soon anyway. (Rec. Doc. 1, ¶22) In addition, the Plaintiff Buyers alleged that they learned post-sale that the Buyers did not employ the activities personnel or have activities equipment required by applicable Licensing Standards. (Rec. Doc. 1, ¶23)

Pursuant to an arbitration clause in the agreements, the parties proceeded to arbitration. The Plaintiff Buyers alleged that the arbitrator dismissed the buyers' claims for breach of the representations and warranties in the APA, finding that these constituted fraud claims falling outside the scope of arbitration. (Rec. Doc. 1, ¶26; Rec. Doc. 12-1, at 3). Thus, the Plaintiff Buyers filed this lawsuit on December 12, 2018 asserting the following claims: Count I – Contractual Warranty; and Count II – Fraud by Maurice, Joyce and Nicol Hannie. (Rec. Doc. 1). Neither the Complaint nor the APA's or HEA's attached thereto set forth the relationship of Nicol Hannie with either HDI or CC, except to allege that Nicol Hannie was "an owner of [Rosewood and Cedar Crest], (Rec. Doc. 1-2 and 1-3, Schedule 3.2(i), at 16 of 67), and a party with "knowledge" with regard to Rosewood. (Rec. Doc. 1-3, at 8).

Nicol Hannie filed the instant Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6), seeking to dismiss the Plaintiff Buyers' contractual warranty claims on the grounds that the Complaint does not allege any grounds upon which Nicol Hannie— who did not sign any contract on behalf of the Sellers—can be personally liable. Nicol Hannie further seeks to dismiss the Plaintiff Buyers' Count II claims for fraud on the grounds that the Plaintiff Buyers failed to plead fraud with particularity.

### Applicable Law

### I.    Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that

merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap,* 541 F.3d

584, 587 (5th Cir.2008). With these precepts in mind, the Court considers the Plaintiff Buyers' Complaint, including the exhibits attached thereto.

## II.   <u>Law applicable to shareholder/member liability.</u>

Nicol Hannie argues that the Complaint fails to state a claim for contractual misrepresentation, because the Plaintiff Buyers have alleged that HDI and CC—not Nicol Hannie—made the representations and warranties at issue. Because this is a diversity case, the Court is to apply Louisiana substantive law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). The Louisiana Supreme Court has provided the following primer on corporate and shareholder liability as codified in La. C.C. art. 435-437 and Title 12 of the Louisiana Revised Statutes:

> The general rule [is] that corporations are distinct legal entities, separate from the individuals who comprise them, and that the shareholders are not liable for the debts of the corporation[.]"

> *****
> There are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation, where the court may ignore the corporate fiction and hold the individual shareholders liable. Generally, that is done where the corporation is found to be simply the "alter ego" of the shareholder. It usually involves situations where fraud or deceit has been practiced by the shareholder acting through the corporation. Another basis for piercing the corporate veil is when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to be distinguishable from its shareholders.

> Some of the factors courts consider when determining whether to apply the alter ego doctrine include, but are not limited to: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and

bookkeeping records; and 5) failure to hold regular shareholder and director meetings.

The fact that one individual owns a majority of stock in the corporation does not in itself make that individual liable for corporate debts. This is particularly true in the case of a closely held corporation where often corporate business is conducted by the majority, or sole, stockholder.

Louisiana courts are reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing. Generally, unless the directors or officers of a corporation purport to bind themselves individually, they do not incur personal liability for debts of the corporation. Furthermore, corporate agents are generally not liable for corporate debts and the burden of establishing the contrary is on the corporate creditor.

When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. In order properly to disregard the corporate entity, one of the primary components which justifies piercing the veil is often present: to prevent the use of the corporate form in the defrauding of creditors.

*Riggins v. Dixie Shoring Co.,* 590 So. 2d 1164, 1167-68 (La. 1991). (Citations omitted.)

Louisiana law regarding liability of members in a limited liability company is similar, having been succinctly explained by the Louisiana Supreme Court as follows:

An LLC…is an entity to which the law attributes personality and is, therefore, a juridical person. *See* La. R.S. 12:1301 ("'Limited liability company' or 'domestic limited liability company' means an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter."). Therefore, as a general proposition, the law considers an LLC and the

member(s) comprising the LLC, as being wholly separate persons. *See* La. C.C. art. 24.

However, in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is "piercing the corporate veil."

*Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So.3d 888, 894–95 (Citations and footnotes omitted.)

The *Ogea* court went on to examine La. R.S. 12:1320, which limits the liability of the LLC members to third-parties. The general rule that a member of an LLC is not personally liable for the debt, obligations, or liabilities of the company is subject to exceptions for fraud, breach of professional duty, or other negligent or wrongful act. *Id.*, at 897, citing La. R.S. 12:1320(D).

Although Nicol Hannie's precise relationship with HDI and CC is not clear on the face of the pleadings, the APA's describe him as "owner." (Rec. Doc. 1-2, at 16; Rec. Doc. 1-3, at 16). Construing these facts in favor of Plaintiffs, and absent any citation to public records showing otherwise, the Court assumes that Nicol Hannie was a shareholder of HDI (a corporation) and a member of CC (a limited liability company). Thus, under the general rule, Nicol Hannie would not be personally liable for the liabilities of HDI or CC. Further, Nicol Hannie did not personally sign any of the agreements. Rather, the agreements were executed by HDI

and CC through their representative (Maurice Hannie in each case). (Rec. Doc. 1-2, at 66; Rec. Doc. 1-3, at 66; Rec. Doc. 1-4, at 9; Rec. Doc. 1-5, at 9).

The Plaintiff Buyers contend that Nicol Hannie is personally liable based upon the fraud exception to the shareholder/member shield. (Rec. Doc. 17, at 10). Nicol Hannie argues that the Plaintiff Buyers have not alleged fraud with particularity, as required by F.R.C.P. Rule 9(b) and that the Plaintiff Buyers' claims against him for fraud are barred by the one-year prescriptive period for delictual actions. The Plaintiff Buyers counter that their claims are for "contractual fraud," which is governed by Louisiana's ten-year prescriptive period for contractual actions, or, alternatively, the two-year period provided for claims against members and shareholders in La. R.S. 12:1502.

### III.    Timeliness of the Plaintiff Buyers' Claims.

The initial endeavor is to precisely define the nature of what the Plaintiff Buyers have pled as "Count I: Contractual Warranty Claims" and "Count II: Fraud by Maurice, Joyce and Nicol Hannie." (Rec. Doc. 1, at 9-14). In response to Nicol Hannie's Motion to Dismiss, the Plaintiff Buyers contend they are asserting a "contract-based fraud claim." (See Rec. Doc. 17 at 18). However, in response to a separate Motion to Dismiss filed by HDI and CC (at Rec. Doc. 12), the Plaintiff Buyers do not appear to disagree with the classification of their claims as negligent

and/or intentional misrepresentation claims. (See Rec. Doc. 1, §26-35; Rec. Doc. 18, at 10).

In discussing the distinction between tort and contract claims for fraud, the Fifth Circuit examined Louisiana law and provided as follows:

> A fraud claim under Louisiana law may arise in both contract and in tort. *See Griffin v. BSFI Western E & P, Inc.,* 00–2122, p. 8 (La.App. 1 Cir. 2/15/02); 812 So.2d 726, 734. With respect to the contract aspect of fraud, fraud is a vice of consent. *See* La. Civ.Code art.1948. It may be the basis for the rescission of a contract. *See* La. Civ.Code art.1958 cmt. b. Actions to rescind a contract due to fraud must be brought within five years after the discovery of the fraudulent behavior giving rise to the cause of action. *See* La. Civ.Code art. 2032. Louisiana also recognizes a tort action for fraud. "[T]here is no general duty to speak, but if someone does speak, she may be liable in tort if she makes an intentional or a negligent misrepresentation. Intentional misrepresentation is fraud...." Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5–7(h) (1996). The prescriptive period for fraudulent misrepresentation, like all torts under Louisiana law, is one year and begins to run from the date injury of damage is sustained. *See* La. Civ.Code art. 3492.

> Under Louisiana law, "[t]he correct prescriptive period to be applied in any action depends on the nature of the action; it is the nature of the duty breached that should determine whether an action is in tort or in contract." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 886 (5th Cir.2002). Louisiana courts look to the allegations and prayer for relief of the petition to determine the true nature of the action and the applicable prescriptive period. *See Ins. Storage Pool, Inc. v. Parish Nat'l Bank,* 97–2757, p. 4 (La.App. 1 Cir. 5/14/99); 732 So.2d 815, 817. Regarding the distinction between actions in tort and in contract, Louisiana courts have consistently held that:

>> The classical distinction between "damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to

11

> all persons. Even when tortfeasor and victim are bound by a
> contract, courts usually apply the delictual prescription to
> actions that are really grounded in tort.
>
> *Trinity Universal Ins. Co. v. Horton,* 33,157, p. 2 (La.App. 2 Cir.
> 4/5/00); 756 So.2d 637, 638. Even when a contract exists between the
> parties, unless a specific contract provision or duty is breached,
> Louisiana treats the action as tort. *Id.* In other words, the mere fact that
> the circumstances arose in the context of a contractual relationship does
> not make the cause of action contractual.
>
> *Clark v. Constellation Brands, Inc.,* 348 F. App'x 19, 21-22 (5th Cir.2009).

Planiol explained the conceptual difference between tort-based and

contractual-based obligations as follows:

> Thus contractual fault supposes the pre-existence of an obligation
> which is the inexecution thereof, while delictual fault supposes the
> absence of the obligation, and its result is the creation of one.
>
> *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 887 (5th
> Cir. 2002), citing *State ex rel Guste v. Simoni, Heck & Associates,* 331
> So.2d 478, 490 (La.1976) (Summers, J., dissenting) (*quoting* 2 M.
> Planiol, Treatise on the Civil Law, Nos. 873–74 at 485–86 (11th ed. La.
> State L. Inst. trans. 1939)).

It is well-settled that claims for negligent and intentional misrepresentation

are delictual in nature and are subject to a one-year liberative prescriptive period.

*Copeland v. Wasserstein, Perella & Co.,* 278 F.3d 472, 480 (5th Cir.2002).

Fraudulent inducement claims (where the plaintiff claims that the defendant

fraudulently provided false information, upon which the plaintiff detrimentally

relied) are also subject to the one-year prescriptive period for delictual actions.

*Henry v. Cisco Sys., Inc.,* 106 Fed.Appx. 235, 239 (5th Cir.2004). However, if the

party alleging fraudulent inducement seeks to annul or rescind the contract, the applicable prescriptive period is five years. La. C.C. art. 2032; *Clark*, 348 Fed.Appx. at 21. Personal actions, for which the law provides no other specific prescriptive period, are subject to a ten-year prescriptive period. La. C.C. art. 3499. As such, breach of contract claims are subject to a ten-year prescriptive period. *Terrebonne Par. Sch. Bd.,* 310 F.3d at 887.

Examining the Plaintiff Buyers' allegations and claims, the Court finds the Buyers' claims are most evocative of claims for misrepresentation, sounding in tort. The Plaintiff Buyers seek to recover for alleged misrepresentations (that the facilities were in compliance with applicable laws) set forth in the contracts. The Plaintiff Buyers are not seeking damages due to any alleged breach of any obligation created by the terms of the contracts. In other words, the obligation to provide information existed before the contract, and the Plaintiff Buyers now seek to recover for Defendants' alleged failure to do so. Neither do the Plaintiff Buyers seek to annul or rescind the contracts. Further, the Plaintiff Buyers admitted that they are seeking to recover based on an affirmative fraudulent act, rather than due to defective performance or non-performance of the contract obligations. Hence, the Court finds that the Plaintiff Buyers' claims are subject to the one-year prescriptive period applicable to tort actions, unless the two-year prescriptive period of La. R.S. 12:1502(D), alternatively urged by the Plaintiff Buyers, applies.

La. R.S. 12:1502 provides a specific prescriptive period for certain actions against shareholders and members. The more specific prescriptive period prevails over general prescriptive periods. *Butler v. Jefferson Par. Fire Dep't*, 15-659 (La. App. 5 Cir. 2/24/16), 186 So.3d 1231, 1237

La. R.S. 12:1502(D) states:

> No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.

Although a one-year prescriptive period would apply to claims for misrepresentation against HDI and CC, the two-year prescriptive period of La. R.S 12:1502(D) applies to claims against Nicol Hannie, assuming for purposes of the instant analysis that the Plaintiff Buyers have stated a valid claim for fraud against Nicol Hannie, as a shareholder of HDI and a member of CC.

Nicol Hannie argued that La. R.S. 12:1502(D) should not be applied in third-party claims by non-member/shareholders (i.e. claimants who are unrelated to the entity). However, the statute broadly applies to "all business organizations formed under the laws of this state and shall be applicable to actions against any officer,

director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated.*"* Although it has limited exceptions,[1] the statute does not by its language limit its application to third-party claimants. Further, 1502(D) has been applied in the third-party context. See e.g. *Wooley v. Lucksinger*, 2006-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 459, *writ granted,* 2009-0586 (La. 12/18/09), 23 So.3d 951, and *writ granted,* 2009-0585 (La. 12/18/09), 23 So.3d 951, and *writ granted,* 2009-0584 (La. 12/18/09), 23 So.3d 952, and *writ granted,* 2009-0571 (La. 12/18/09), 23 So.3d 953, and *aff'd in part, rev'd in part,* 2009-0571 (La. 4/1/11), 61 So.3d 507; and G. Morris & W. Holmes, 7 La. Civ. Law Treatise, *Business Organizations,* § 22.17, 2007 Pocket Part. Hence, the Court is constrained by the plain language of the statute and finds it applicable to this case.

The two-year prescriptive period commences with the date the alleged act or omission was discovered or should have been discovered, but not more than three years from the date of the alleged act or omission. La. R.S. 12:1502(D). The Complaint is unclear as to the exact time of Nicol Hannie's alleged statements and knowledge regarding the need to hire or re-hire an additional nurse, except that 1) he was "aware prior to the sale" of the need to hire additional nursing staff, having

---

[1]    "The excluded actions relate to actions for unlawful distributions against shareholders of corporations (La. R.S. 12:1–622), directors of a corporation (La. R.S. 12:1–833), members of an LLC (La. R.S. 12:1328(C)), and claims against a dissolved corporation (La. R.S. 12:1–1407)." *Salemi v. TMR Expl., Inc.,* 2016-0567 (La. App. 1 Cir. 6/13/17), 224 So.3d 14, 20, *writ denied,* 2017-1161 (La. 10/27/17), 228 So.3d 1227.

signed an attestation with the Louisiana Department of Health and Hospitals in August 2015 (Rec. Doc. 1, ¶20); and 2) that after the nurse hired for a short period during 2016 left, Nicol Hannie decided not to replace her. (Rec. Doc. 1, ¶22). The Complaint does not set forth the time of Nicol Hannie's alleged statement wherein he acknowledged that a new hire was needed and commented "to the effect that HDI would be selling the facility soon, anyway," or when the alleged statement occurred in relation to the execution of the APA's and the closing. (Rec. Doc. 1, ¶22).

Neither does the Complaint state with precision the date on which the Plaintiff Buyers learned of the alleged nursing issues and non-compliance with applicable laws, except to allege that "Shortly after closing, Colonial Oaks' employees and staff discovered…" (Rec. Doc. 1, ¶18) and that "Colonial Oaks learned post-sale…" (Rec. Doc. 1, ¶23). The Complaint alleges that the Plaintiff Buyers made a written request on May 30, 2017 for adjustment of certain costs, demanding money from the HEA's; however, the Complaint does not allege whether the request included sums attributable to the alleged staffing and compliance issues. (Rec. Doc. 1, ¶21). The Complaint does reference a second request on November 30, 2017, which "added a claim…based on the breaches of the Sellers' representations and warranties in the APAs." (Rec. Doc. 1, ¶24). Construing these allegations in the Plaintiff Buyers' favor, the discovery of the alleged misrepresentations manifests itself in the pleadings at the latest on November 30, 2017. Thus, the Plaintiff Buyers' suit, filed

on December 12, 2018, initially appears timely vis-à-vis Nicol Hannie, as it was filed less than two years later. The Court further notes that the Complaint alleges that the deals closed in December 2016, nearly one year before the Plaintiff Buyers sent the November 30, 2017 letter. This substantial gap in time, during which the Plaintiff Buyers had presumably been operating the facilities, leaves unanswered many questions not only as to when Plaintiffs actually learned of the alleged compliance issues, but also as to when they *should* have learned of the issues.

## IV.    Whether the Plaintiff Buyers have stated a sufficient claim for fraud against Nicol Hannie.

Under Louisiana law, an action for fraud against a party to a contract requires: (1) "a misrepresentation, suppression, or omission of true information;" (2) "the intent to obtain an unjust advantage or to cause damage or inconvenience to another;" and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the contract. *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.,* 689 F.3d 380, 388 (5th Cir.2012), citing *Shelton v. Standard/700 Assocs.,* 798 So.2d 60, 64 (La.2001). This is also discussed in the jurisprudence as "fraudulent inducement." See *Koerner v. CMR Constr. & Roofing, L.L.C.,* 910 F.3d 221, 228 (5th Cir.2018); *Henry, supra.*

Nicol Hannie was not a party to any of the contracts at issue. Nonetheless, the Plaintiff Buyers argue that HDI and CC's separate personalities can be pierced, such that Nicol Hannie's alleged fraudulent conduct can be imputed to HDI and CC, who

17

were parties to the contract. Louisiana law allows a party to "pierce the veil" of a corporation or LLC when a corporate shareholder or an LLC member is guilty of fraud. See *Riggins, supra*. The existence of a contract underlying fraud claims justifies application of more stringent standards to the party attempting to pierce the veil. In relying on *Riggins*, the Fifth Circuit explained:

> The Louisiana courts have indicated that the corporate veil should be pierced when adherence to the corporate fiction would clearly result in inequity. *See Watson v. Big T Timber Co., Inc.,* 382 So.2d 258, 262 (La.Ct.App.3d Cir.1980); *Giuffria Realty Co., Inc. v. Kathman–Landry, Inc.,* 173 So.2d 329, 334 (La.Ct.App. 4th Cir.1965). The ultimate inquiry, however, requires a balance of the policies behind the recognition of a separate corporate existence with the policies justifying piercing. *Glazer v. Comm'n on Ethics for Public Employees,* 431 So.2d 752, 757 (La.1983). This balance is less likely to tip in favor of disregarding the corporate veil when the underlying claim is based on contract. *Riggins,* 592 So.2d at 1285 (concurrence in denial of rehearing); *see also Abraham v. Lake Forest, Inc.,* 377 So.2d 465, 469 (La.Ct.App. 4th Cir.1979), *writ denied,* 380 So.2d 99, 100 (La.1980); Morris, "Piercing the Corporate Veil in Louisiana," 52 La.L.Rev. 271 (1991). More stringent standards are justified with respect to contract claims because the plaintiff's claim depends on the existence of a contract in which he chose to rely solely on the obligation of the corporation without any additional guarantees from its shareholders. *Riggins,* 592 So.2d at 1285 (concurrence in denial of rehearing); Morris, *supra,* at 290–92. As such, a plaintiff urging a court to pierce the veil under such circumstances faces an additional hurdle to this already difficult task.
>
> *Huard v. Shreveport Pirates, Inc.,* 147 F.3d 406, 409 (5th Cir.1998).

The Court interprets *Riggins* and interpreting decisions to mean that fraud by a shareholder/member alone is sufficient to pierce the corporate/LLC veil. Thus, the

Court must analyze the Plaintiff Buyers' specific allegations of fraud against Nicol Hannie.

F.R.C.P. Rule 9(b) mandates that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997), citing *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994).

"Rule 9(b) is satisfied where a plaintiff has alleged "[t]he basic framework, procedures, (and) nature of the fraudulent scheme, (as well as) the financial arrangements and inducements among the parties ... that give rise to (the) belief that fraud has occurred with the requisite specificity to generate a strong inference of [fraudulent intent]." *Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC,* No. 6:17-CV-01336, 2018 WL 7051038, at *6 (W.D. La. Nov. 21, 2018), *report and recommendation adopted,* No. 6:17-CV-01336, 2019 WL 303122 (W.D. La. Jan. 17, 2019), quoting *U.S. ex rel. Hebert v. Dizney,* 295 F. App'x 717, 723 (5th Cir.2008), and *7-Eleven Inc. v. Puerto Rico-7 Inc.,* 2008 WL 4951502, at *5 (N.D. Tex.2008).

Considering that Nicol Hannie's alleged statements and decision not to hire a nurse for medication administration occurred *before* the sale of the facilities, the Court is not convinced that these actions, as currently alleged, state a claim for fraud. In other words, Nicol Hannie's alleged statements and actions, considered alone (without the existence of the contracts, which may not have existed at the time) do not, on the face of the pleadings, constitute "a misrepresentation or suppression of the truth," made with "the intent to obtain an unjust advantage or to cause damage or inconvenience to another."

In addition, as noted above, the Complaint lacks specific information as to when the Plaintiff Buyers discovered the alleged staffing and compliance issues. The Complaint lacks other necessary specific allegations, such as the specific statutes allegedly violated and specific conduct of Nicol Hannie which indicates an intent to defraud. Because the Plaintiff Buyers have asserted claims for fraud, which can be especially detrimental to the accused parties in their commercial professions, it is incumbent upon Plaintiffs to set forth factual allegations with such particularity as to generate a "strong inference of fraudulent intent." *Medve, supra*. As currently alleged, the Complaint fails to clear this high hurdle.

In response to Nicol Hannie's Motion, the Plaintiff Buyers requested an opportunity to amend the Complaint in the event the Court found sufficient fraud allegations lacking. (Rec. Doc. 10, at 15, fn. 17). "A motion to dismiss under rule

12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir.1997), quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). Under F.R.C.P. Rule 15, a court should freely give leave to amend a complaint when justice so requires. Therefore, a court "[g]enerally. . . should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff 'at least one chance to amend.'" *Hernandez v. Ikon Office Solutions, Inc*., 306 F. App'x 180, 182 (5th Cir.2009); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir.2002). See also *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir.1986). Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir.2002). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Norman v. Apache Corp*., 19 F.3d 1017, 1021 (5th Cir.1994); *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc*., 933 F.2d 314, 320 (5th Cir.1991).

Accordingly, as discussed herein, the Court recommends that the Plaintiff Buyers be permitted an opportunity to amend the Complaint to set forth more specific facts regarding Nicol Hannie's alleged fraud, including especially specific

relevant time frames. Likewise, the Amended Complaint should also set forth sufficiently particular facts showing fraud by Maurice and Joyce Hannie.

## Conclusion

For the reasons discussed herein, it is recommended that the 12(b)(6) Motion to Dismiss filed by Nicol Hannie be DENIED WITHOUT PREJUDICE, insofar as the Court finds the Complaint does not presently state a sufficient claim for fraud against Nicol Hannie. However, given the Plaintiff Buyer's request for leave to amend, it is further recommended that Plaintiffs be given fifteen (15) days to file an amended complaint. Thereafter, Defendants should be permitted an opportunity to re-urge motions to dismiss the amended complaint.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.   See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 14th day of June, 2019.

_____
PATRICK J. HANNA