# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**COLONIAL OAKS ASSISTED LIVING LAFAYETTE**

**VERSUS**

**HANNIE DEVELOPMENT INC**

**CASE NO. 6:18-CV-01606**

**JUDGE DOUGHTY**

**MAGISTRATE JUDGE HANNA**

## REPORT AND RECOMMENDATION

Before the Court is the Rule 12(b)(6) Motion to Dismiss filed on behalf of Defendants, Hannie Development, Inc. ("HDI") and Cedar Crest, LLC ("CC") (collectively at times "the Sellers"). (Rec. Doc. 12). Plaintiffs, Colonial Oaks Assisted Living Lafayette, LLC ("COALL") and Colonial Oaks Memory Care Lafayette, LLC ("COMCL") (collectively, "the Plaintiff Buyers"), oppose the Motion (Rec. Doc. 18), and HDI and CC have replied (Rec. Doc. 22). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that HDI and CC's Motion be DENIED.

## Factual Background

This suit arises out of the sale of Rosewood Retirement and Assisted Living Center ("Rosewood") from HDI to Seniors Investments II, LLC ("Seniors"), and the sale of the Cedar Crest Personal Memory Center ("Cedar Crest") from CC to Seniors, both of which occurred on March 31, 2016. Seniors is apparently affiliated with the Colonial Oaks Plaintiff entities, as Plaintiffs allege that Colonial Oaks Assisted Living Lafayette, LLC ("COALL") purchased Rosewood and that Colonial Oaks Memory Care Lafayette, LLC ("COMCL") purchased Cedar Crest. (Rec. Doc. 1, ¶10). The Sellers and Buyers entered into Asset Purchase Agreements ("APA") for each facility (HDI and COALL for Rosewood; CC and COMCL for Cedar Crest). (Rosewood APA at Rec. Doc. 1-2; Cedar Crest APA at Rec. Doc. 1-3). The Sellers and Buyers also executed Holdback Escrow Agreements ("HEA") for each facility. (Rosewood HEA at Rec. Doc. 1-4; Cedar Crest HEA at Rec. Doc. 1-5). The pertinent provisions of the APAs and HEAs are practically identical for each facility.

According to the Complaint, the Buyers closed on both APA's (dated March 31, 2016) and began operating both facilities on December 1, 2016. (Rec. Doc. 1, ¶17). Shortly after closing, the Buyers alleged they discovered that a substantial proportion of the residents at Rosewood were incapable of understanding what their medications were, what they were for, and/or the need for the medication, such that, under applicable state regulations, they were not considered appropriate for self-

2

administration of medications, and licensed nursing staff was required to assist those residents with medication administration. (Rec. Doc. 1, ¶18). Thus, the Plaintiff Buyers alleged they were required to increase their nursing staff. They further alleged that Nicol Hannie, director of Rosewood, was aware prior to the sale that HDI needed to hire licensed nursing staff in order to come into compliance with the self-administration regulation. (Rec. Doc. 1, ¶20). The Plaintiff Buyers further alleged that Joyce Hannie had, in 2016, hired a nurse to provide medication administration services, but the nurse was only employed for a short period of time, and that Joyce Hannie and Nicol Hannie made a conscious decision not to replace her. According to the Complaint, facility personnel raised the need to hire a new nursing staff with Nicol Hannie, and that he acknowledged same, but commented that HDI would be selling the facility soon anyway. (Rec. Doc. 1, ¶22). In addition, the Plaintiff Buyers alleged that they learned post-sale that the Buyers did not employ the activities personnel or have activities equipment required by applicable Licensing Standards. (Rec. Doc. 1, ¶23)

Pursuant to an arbitration clause in the agreements, the parties proceeded to arbitration. The Plaintiff Buyers alleged that the arbitrator dismissed the Buyers' claims for breach of the representations and warranties in the APA's, finding that these constituted fraud claims falling outside the scope of arbitration. (Rec. Doc. 1, ¶26; Rec. Doc. 12-1, at 3). Thus, the Plaintiff Buyers filed this lawsuit on December

3

12, 2018 asserting the following claims: Count I – Contractual Warranty; and Count II – Fraud by Maurice, Joyce and Nicol Hannie. (Rec. Doc. 1).

HDI and CC filed the instant Motion to Dismiss pursuant to F.R.C.P. Rule 12(b)(6), seeking to Dismiss the Plaintiff Buyers' claims, which they contend is for fraudulent and negligent misrepresentations, on the grounds that the Plaintiff Buyers had over eight months of due diligence to investigate each facility and discover the alleged staffing and compliance issues. As such, HDI and CC argue the Plaintiff Buyers had ample opportunity to discover the grounds for the alleged misrepresentations. (Rec. Doc. 12-1, at 3).

## Applicable Law

### I.    Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th

Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from

conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).  See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008). With these precepts in mind, the Court considers the Plaintiff Buyers' Complaint, including the exhibits attached thereto.

II.    **Whether the Plaintiff Buyers have stated a claim for fraudulent or negligent misrepresentation.**

The Complaint alleges a cause of action against HDI and CC for "contractual warranty claims." (Rec. Doc. 1, at 9, Count I). HDI and CC classify this claim as one for fraudulent and/or negligent misrepresentation. The Plaintiff Buyers do not appear to disagree with this classification. (See Rec. Doc. 1, §26; Rec. Doc. 18, at 10).

Because this is a diversity case, the Court is to apply Louisiana substantive law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). Louisiana law recognizes a distinction between negligent and fraudulent misrepresentation. Negligent misrepresentation is a tort claim derived by La. C.C. art. 2315 and 2316. *Simmons, Morris & Carroll, LLC v. Capital One, N.A.,* 49,005 (La. App. 2 Cir. 6/27/14), 144 So. 3d 1207, 1214, *writ denied,* 2014-1900 (La. 11/14/14), 152 So. 3d 886, citing *Daye v. General Motors Corp.,* 97–1653 (La.9/9/98), 720 So.2d 654; and *Devore v. Hobart Mfg. Co.,* 367 So.2d 836, 839 (La.1979). The tort of negligent misrepresentation is limited to cases in which a contractual or fiduciary relationship exists. *Id*.

> Negligent misrepresentation cases are evaluated on a case-by-case basis using the duty-risk analysis. *Daye, supra; Barrie v. V.P. Exterminators, Inc.,* 625 So.2d 1007, 1015 (La.1993); *Long v. Bruns,* 31,427 (La.App.2d Cir.1/20/99), 727 So.2d 664, *writ denied,* 99–0480 (La.4/23/99), 742 So.2d 881…To prevail on a negligent misrepresentation claim, there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused damages to the plaintiff. *Barrie, supra; Succession of McKnight, supra.* The plaintiff's damages must result from his justifiable reliance on the defendant's misrepresentation. *Tres' Chic In A Week, L.L.C. v. Home Realty Store,* 2007–1373 (La.App.1st Cir.7/17/08), 993 So.2d 228; *Hughes v. Goodreau,* 2001–2107 (La.App. 1st Cir.12/31/02), 836 So.2d 649, *writ denied,* 2003–0232 (La.4/21/03), 841 So.2d 793.

*Id*. at 1214-1215.

As concluded by the Court in *Simmons*, negligent representation "require[s] justifiable reliance by the claimant on the (mis)representation by the defendant in order to recover." *Id*.

"In order to prove a claim of 'fraudulent misrepresentation,' the plaintiff must show: (1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resulting injury." *Wilson v. Davis*, 2007-1929 (La. App. 1 Cir. 5/28/08), 991 So. 2d 1052, 1061, *writ denied,* 2008-2011 (La. 11/10/08), 996 So. 2d 1070, and *writ denied,* 2008-2020 (La. 11/10/08), 996 So. 2d 1071, citing *Systems Eng'g and Sec., Inc. v. Science & Eng'g Ass'ns, Inc.,* 06–0974, p. 3 (La.App. 4 Cir. 6/20/07), 962 So.2d 1089, 1091. "Additionally, a contractual fraud claim will not lie if "the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." *Koerner v. CMR Constr. & Roofing, L.L.C.,* 910 F.3d 221, 228 (5th Cir.2018).

The Complaint alleges that HDI and CC made warranties and representations in the APA's that the facilities were in material compliance with all applicable laws, including those pertaining to staffing. (Rec. Doc. 1, ¶15). The APA's attached to the Complaint provide:

> **10.1 Seller's Representations.** To induce Buyer to enter into this Agreement, Seller hereby represents and warrants to Buyer as of the date of this Agreement and as of the Closing Date, as follows…:
>
> (j) Each of the Seller and the Facility is in material compliance with each, and is not in material violation of any, applicable Law to which

the Facility is subject, and has not failed to obtain any Consent or Approval, or other governmental authorization or inspection necessary to the ownership or use of the Assets or to the conduct of the Business. Seller has not received any written notice of any violations of any applicable Law, nor, to Seller's knowledge, are there any such violations, including, without limitation, violations of state licensing requirements for operation of the Facility or safety, handicapped accessibility, ADA, health, environmental, fire, zoning or subdivision laws, ordinances, codes or regulations. To Seller's Knowledge, the Improvements presently comply in all material respects with all applicable building codes and other applicable Laws, state licensing requirements, all applicable seismic standards, safety, handicapped accessibility, ADA, health, environmental, fire, zoning and subdivision laws, ordinances, codes and regulations (including satisfaction of applicable parking requirements).

(Rec. Doc. 1-2, at page 23-25; Rec. Doc. 1-3, at page 23-24).

The Plaintiff Buyers allege that they did not learn that additional nursing staff was needed for medication administration until after closing. (Rec. Doc. 1, ¶17-19). They allege that Nicol Hannie is identified as a "knowledge party"[1] and that he was aware prior to the sale that HDI needed to hire licensed nursing staff in order to come into compliance with applicable laws and regulations. (Rec. Doc. 1, ¶20). The Plaintiff Buyers further allege that upon interviewing facility staff, they learned that Joyce Hannie had been aware that staffing at Rosewood had been insufficient to comply with applicable laws and regulations, and that she had in 2016 hired a nurse

---

[1]     The Complaint alleges that Nicol Hannie is a "knowledge party" in both APA's; however, only the Rosewood APA identifies Nicol Hannie as a party with knowledge. (Rec. Doc. 1-3, at page 4).

to provide medication administration services and made a conscious decision not to replace the nurse when she (the nurse) left, despite knowledge that a licensed nurse was necessary for compliance with applicable laws and regulations. The Plaintiff Buyers alleged that when facility personnel raised the need to hire new nursing staff with Nicol Hannie, he acknowledged that a nurse was needed for that purpose "but made a comment to the effect that HDI would be selling the facility soon, anyway." (Rec. Doc. 1, ¶22). Finally, the Plaintiff Buyers alleged they learned post-sale that HDI and CC had not employed activities personnel and did not have activities equipment, as required by 2015 Licensing Standards. (Rec. Doc. 1, ¶23).

The Plaintiff Buyers have, on the face of the pleadings, stated a claim for negligent misrepresentation, because, first, the factual allegations and attached APA's (specifically Section 10.1, set forth above) show that HDI and CC owed the Buyers a duty to supply correct information, specifically that the facilities were in material compliance with applicable laws and regulations. Second, by alleging that Nicol Hannie (identified as an "owner" of Rosewood and Cedar Crest[2]) and Joyce Hannie (identified in the Rosewood APA as a person of "knowledge"[3]) knew that a particular nurse(s) was needed to comply with medication administration laws, but that they allegedly did not divulge this information prior to the closing, the Plaintiff

---

[2]    Rec. Doc. 1-2, at 16; Rec. Doc. 1-3 at 16.
[3]    Rec. Doc. 1-2, at 4.

Buyers have set forth sufficient facts showing a breach of the duty to provide information. Finally, the Plaintiff Buyers have alleged facts showing that they incurred damages (in the amounts necessary to hire additional nursing staff to come into compliance with applicable laws) caused by the Nicol and Joyce Hannie's alleged pre-sale failures to disclose.

HDI and CC moved to dismiss the Plaintiff Buyers' claims solely on the alleged absence of facts supporting the prerequisite of justifiable reliance. "In determining justifiable reliance, courts generally look to the reasonableness of that reliance. Under Louisiana law, reasonableness is determined by examining factual circumstances, one of which is the commercial sophistication of the party asserting the claim." *In re Ark-La-Tex Timber Co., Inc.,* 482 F.3d 319, 334 (5th Cir.2007), citing *Water Craft Mgmt., L.L.C. v. Mercury Marine,* 361 F.Supp.2d 518 (M.D.La.2004); *Academy Mortgage Co. v. Barker, Boudreaux, Lamy & Foley,* 96–0053 (La.App. 4th Cir.4/24/96), 673 So.2d 1209. The reasonableness of a party's reliance is generally a question of fact. *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.,* 376 F.3d 399, 403 (5th Cir.2004); *Roxco Ltd. v. Harris Specialty Chem., Inc.,* 85 F. App'x 375, 379 (5th Cir.2004).

HDI and CC argue that the Plaintiff Buyers' reliance upon the Sellers' representations and warranties was unreasonable, citing an eight-month due diligence period and adequate opportunity to investigate afforded by Sections 12.1

11

and 11.4 of the APA's (attached to the Complaint at Doc. 1-2 and 1-3). (Rec. Doc. 12-1, at 6). HDI and CC further argue that the Plaintiff Buyers could have implemented the Pre-Closing Management structure provided for in the APA's (Rec. Doc. 1-2, ¶11.5; Rec. Doc. 1-3, ¶11.5), during which they could have managed and/or operated the facility before closing. (Rec. Doc. 12-1, at 7). HDI and CC also rely upon "Due Diligence Checklists" attached to each APA as Exhibit A, suggesting that the Plaintiff Buyers had, in fact, demanded the information and documentation identified therein.[4] In other words, HDI and CC suggest that the Plaintiff Buyers failed to discover the staffing issue, despite possessing the extensive documents from the Sellers (i.e. apparently having done some extent of due diligence). (Rec. Doc. 12-1, at 7).

The Plaintiff Buyers appear to be commercially sophisticated, considering the complex agreements and the Complaint's allegations regarding the Plaintiff Buyers' pre-sale and post-sale conduct, such as formulating purchase analyses/pro formas, analyses of current and future nursing and activities staffing payroll, and creating business plans for the two facilities. (See Rec. Doc. 1, ¶16).[5] Nonetheless, whether

---

[4]    Although these checklists were not filed with the APA's attached to the Complaint, they are referred to in the Complaint (via the exhibits thereto) and are central to Plaintiffs' claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). Thus, the Court will also consider the Due Diligence Checklists.

[5]    The Sellers argued in brief that the Buyers are "part of a corporate structure that operates numerous assisted-living facilities nationwide;" however, there are no factual allegations

the Plaintiff Buyers were reasonable in relying upon HDI and CC's warranties and representations regarding the staff is a question which cannot be answered at this early stage in the proceedings based solely on the factual allegations.

As the Plaintiff Buyers point out, "fact questions remain as to whether [they] could have ascertained the truth through the investigative rights provided." (Rec. Doc. 18, at 12). For instance, the Plaintiff Buyers argue that while the APA's provided investigatory rights, the APA's imposed restrictions on those rights, such as "compliance with privacy rights of Residents of the Facility." (Rec. Doc. 18, at 13, citing Rec. Doc. 1-2 at 42 of 67 and Rec. Doc. 1-3, at 42 of 67). The extent to which HIPPA or other privacy considerations impacted the Plaintiff Buyers' ability to investigate staffing and other needs is an issue which cannot be resolved on the face of the pleadings. HDI and CC cite HIPPA's provision which allows disclosures pursuant to the sale of certain entities; however, whether other privacy concerns could have impacted the Buyers' investigatory rights is unclear. At the very least, the discrepancies must be resolved in the Plaintiff Buyers' favor at this point in the proceedings.

Similarly, the Plaintiff Buyers point out that the Pre-Closing Management provision in the APA's contemplates certain conditions, specifically necessary

---

in the Complaint supporting this contention, and as such, the Court cannot assume it as a true fact.

approval and/or licenses by government authorities. (Rec. Doc. 1-2 at 42 of 67; Rec. Doc. 1-3, at 42 of 67). The extent to which necessary approval and/or licenses by government authorities was available and/or inhibited the Plaintiff Buyers' from implementing the Pre-Closing Management structure cannot be resolved on the face of the pleadings. The Court is further persuaded by the Plaintiff Buyers' argument that their decision not to invoke the Pre-Closing Management Structure can be deemed unreasonable on the face of the pleadings, without regard to extenuating facts. Finally, HDI and CC's reliance on the Due Diligence Checklists is counter-intuitive to the Sellers' position, as this argument suggests that the Plaintiff Buyers actually engaged in due diligence, yet were unable to discover the alleged staffing issues. The sufficiency of the Plaintiff Buyers' due diligence and the extent to which the Sellers provided requested documents which could have manifested the staffing and compliance issues are issues of fact which cannot be resolved on the face of the pleadings. The existence of these and other unanswered questions of fact regarding the Plaintiff Buyers' reasonableness in relying upon the Sellers' representations dictates that the issues cannot be resolved pursuant to Rule 12(b)(6).

HDI and CC rely heavily upon "Buyers' admission in Complaint paragraph 33 – that the alleged failure to comply with state staffing requirements 'would have been apparent upon reasonable inquiry and investigation.'" (Rec. Doc. 22, at 6, citing Rec. Doc. 1, ¶33). To conclude that this statement constitutes an "admission"

that the Plaintiff Buyers could have discovered the alleged staffing and compliance issues is to disregard its context. The Plaintiff Buyers alleged the staffing issues would have been apparent upon reasonable inquiry and investigation *to the Sellers*, who, as owners, were not restricted by the terms of the APA's in their unfettered ability to make those determinations. Contrarily, the Plaintiff Buyers' investigatory rights were arguably in some instances conditioned or restricted. Hence, the Court declines to find, based solely on the face of the pleadings, that Paragraph 33 constitutes an admission.

Where the Plaintiff Buyers have set forth facts sufficient to state a plausible claim for negligent and/or fraudulent misrepresentation,[6] the Court will not attempt to weigh presumed and suggested facts in an effort to determine the reasonableness of the Plaintiff Buyers' reliance. In any event, when factual disputes are resolved in Plaintiffs' favor for purposes of this Rule 12(b)(6) Motion (e.g. if the Court assumes that privacy considerations prevented the Plaintiff Buyers from making determinations regarding staffing compliance), then it is at least arguable that the Plaintiff Buyers' reliance was reasonable.

---

[6] HDI and CC did not challenge the Complaint with regard to the second element of fraudulent misrepresentation (whether there was an intent to deceive), and the Court thus makes no findings in that regard. Neither did HDI and CC challenge the Complaint as prescribed.

## Conclusion

For the reasons discussed herein, it is recommended that the 12(b)(6) Motion to Dismiss filed by Hannie Development, Inc. and Cedar Crest, LLC be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 14th day of June, 2019.

_____
PATRICK J. HANNA

16