UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| COLONIAL OAKS ASSISTED LIVING LAFAYETTE | CASE NO. 6:18-CV-01606 |
| VERSUS | JUDGE DOUGHTY |
| HANNIE DEVELOPMENT INC | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Before the Court is the Second Rule 12(b)(6) Motion to Dismiss and Motion for Summary Judgment filed on behalf of Defendants, Hannie Development, Inc. ("HDI") and Cedar Crest, LLC ("CC") (collectively at times "the Sellers"). (Rec. Doc. 53). Nicol Hannie joins in the Motion. (Rec. Doc. 54). Plaintiffs, Colonial Oaks Assisted Living Lafayette, LLC ("COALL") and Colonial Oaks Memory Care Lafayette, LLC ("COMCL") (collectively, "the Buyers"), opposed the Motion (Rec. Doc. 62), and HDI and CC replied (Rec. Doc. 64). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that HDI and CC's Motion be GRANTED, and that Nicol Hannie's Motion be GRANTED. The Court

recommends that the Buyers' claims against the Sellers and Nicol Hannie be dismissed with prejudice.

## Factual Background

This suit arises out of the sale of Rosewood Retirement and Assisted Living Center ("Rosewood") from HDI to COALL and the sale of the Cedar Crest Personal Memory Center ("Cedar Crest") from CC to COMCL, both of which occurred on March 31, 2016. This Court previously considered Motions to Dismiss by the Sellers and Nicol Hannie. The Court denied the Sellers' Motion to Dismiss, finding that the Buyers had stated a claim for relief against HDI and CC for at least negligent misrepresentation. (Rec. Doc. 33,[1] adopted by Rec. Doc. 38). The Court denied without prejudice Nicol Hannie's Motion to Dismiss, allowing the Plaintiff Buyers the opportunity to amend to attempt to state a sufficient claim for fraud against Nicol Hannie. (Rec. Doc. 32, adopted by Rec. Doc. 48). The Plaintiff Buyers amended accordingly. (Rec. Doc. 44).

In the Amended Complaint, Plaintiffs allege that COALL purchased Rosewood and that COMCL purchased Cedar Crest. (Rec. Doc. 44, ¶10). The Sellers and Buyers entered into Asset Purchase Agreements ("APA") for each facility (HDI and COALL for Rosewood; CC and COMCL for Cedar Crest). (Rosewood APA at

---

[1] See analysis at Rec. Doc. 33, p. 10-14, and footnote 6.

Rec. Doc. 1-2; Cedar Crest APA at Rec. Doc. 1-3). The Sellers and Buyers also executed Holdback Escrow Agreements ("HEA") for each facility. (Rosewood HEA at Rec. Doc. 1-4; Cedar Crest HEA at Rec. Doc. 1-5). The pertinent provisions of the APAs and HEAs are practically identical for each facility.

The Buyers allege that Maurice ("Mo") Hannie is one of two shareholders of HDI, a manager of CC, and the president/director of Hannie Consulting, Inc., which owns 1/3 share of CC. Nicol Hannie is alleged to be a shareholder of HDI, a member and manager of HAN Holdings, LLC (one of the members of CC), and the Executive Director of Rosewood prior to the sale. Joyce Hannie (Mo Hannie's wife) is alleged to own shares of the companies in the community with her husband, and that she was the Executive Director and agent of Cedar Crest. (Rec. Doc. 44, ¶ 5-7).

According to the Complaint, the Buyers closed on both APA's (dated March 31, 2016) and began operating both facilities on December 1, 2016. (Rec. Doc. 44, ¶18). After January 31, 2017 (the date on which Nicol Hannie was removed as Rosewood's Executive Director), the Buyers alleged they discovered that a substantial proportion of the residents at Rosewood were incapable of understanding what their medications were, what they were for, and/or the need for the medication, such that, under applicable state regulations, they were not considered appropriate for self-administration of medications, and licensed nursing staff was required to assist those residents with medication administration. (Rec. Doc. 44, ¶21; 24; 26).

3

Thus, the Plaintiff Buyers alleged they were required to increase their nursing staff. (Rec. Doc. 44, ¶22). They further alleged that Nicol Hannie, director of Rosewood, was aware prior to the sale that HDI needed to hire licensed nursing staff in order to come into compliance with the self-administration regulation, and that he "ignored the contractual duty to represent that the facilities were in compliance with state regulations." (Rec. Doc. 44, ¶23). Specifically, the Buyers alleged that their discovery of the noncompliance situation was delayed by Nicol Hannie's practices, continued post-closing, of utilizing non-nursing personnel to administer medication and/or allowed self-administration of medication by those who were incapable. (Rec. Doc. 44, ¶27). The Amended Complaint goes on to detail Nicol Hannie's handling of certain due diligence materials given to the Buyers, and the Buyers' discovery that Rosewood did not meet the applicable standard. (Rec. Doc. 44, ¶28-36).

Regarding the Cedar Crest facility, the Buyers alleged that Joyce told a former Executive Director, Laurie Deslatte, that they would not hire the nurse needed to bring Cedar Crest into compliance with applicable regulations until instructed to do so by the La. Dept. of Health and Hospitals, and that, although a part-time nurse was employed for about a month, Mo Hannie told Ms. Deslatte to hold off on hiring another nurse. (Rec. Doc. 44, ¶37-40). The Buyers' subsequent investigation allegedly revealed further pre-closing knowledge of non-compliance. (Rec. Doc. 44, ¶42-44).

Pursuant to an arbitration clause in the agreements, the parties proceeded to arbitration. The Buyers alleged that the arbitrator dismissed their claims for breach of representations and warranties in the APA's, finding that these constituted fraud claims falling outside the scope of arbitration. (Rec. Doc. 1, ¶26; Rec. Doc. 12-1, at 3). Thus, the Buyers filed this lawsuit on December 12, 2018, asserting the following claims: Count I – Contractual Warranty; and Count II – Fraud by Maurice, Joyce and Nicol Hannie. (Rec. Doc. 1). All Defendants filed Motions to Dismiss pursuant to F.R.C.P. Rule 12(b)(6). HDI and CC moved to dismiss the claims on the exclusive grounds that the Plaintiff Buyers had over eight months of due diligence to investigate each facility and discover the alleged staffing and compliance issues, such that the Plaintiff Buyers had ample opportunity to discover the grounds for the alleged misrepresentations. This Court denied the Motion, stating:

> Where the Plaintiff Buyers have set forth facts sufficient to state a plausible claim for negligent and/or fraudulent misrepresentation, the Court will not attempt to weigh presumed and suggested facts in an effort to determine the reasonableness of the Plaintiff Buyers' reliance. In any event, when factual disputes are resolved in Plaintiffs' favor for purposes of this Rule 12(b)(6) Motion (e.g. if the Court assumes that privacy considerations prevented the Plaintiff Buyers from making determinations regarding staffing compliance), then it is at least arguable that the Plaintiff Buyers' reliance was reasonable.

(Rec. Doc. 33, at p. 15; adopted by Doc. 38).

In its ruling denying HDI and CC's first Motion to Dismiss, the Court specifically noted that HDI and CC did not challenge the Complaint with regard

intentional fraudulent misrepresentation, such that the Court made no finding in that regard. (Rec. Doc. 33, p. 15, fn. 6). Subsequent to the foregoing ruling, the Sellers filed a separate action in this Court seeking to vacate or modify the arbitration award. (*Hannie Development et al. v. Colonial Oaks et al*, United States District Court for the Western District of Louisiana, Docket. No. 6:19-cv-00833). In that suit, the Sellers filed, *inter alia*, the arbitrator's Order severing the Buyers' fraud claim from the arbitration proceedings. The arbitrator held:

> The Arbitrator finds that the Buyers' staffing misrepresentation claim is not arbitrable because it is a fraud claim which does not fall within the APA section 18 exclusive remedy provisions. In this instance, according to La. C.C. Art. 1953, "(f)raud is a misrepresentation or a suppression of the truth made with the intention either to obtain unjust advantage for one party or to cause a loss or inconvenience to the other." Buyers allege Sellers "intentionally and knowingly breached their contract warranties" by "misrepresent[ing] that the staffing at the facilities comply with the applicable laws." The Arbitrator agrees with the argument of the Sellers that the alleged intentional misrepresentation is a claim for intentional misrepresentation, or in other words, fraud.

Docket No. 6:19-cv-00833, Rec. Doc. 1-8, p. 3-4.

With regard to the Buyers' specific allegations against Nicol Hannie, the Amended Complaint alleges the following facts:

- Nicol Hannie is identified as a "knowledge party" in the Rosewood APA and that he was aware prior to the sale that licensed nursing staff was needed to come into regulation compliance. (Rec. Doc. 44, ¶23).

- Nicol Hannie remained as the Executive Director of Rosewood after the sale, during which time he "continued the same practices of" allowing inappropriate medication administration, without the Buyers' knowledge. (Rec. Doc. 44, ¶27).

- Nicol Hannie was responsible for collecting the due diligence material and sending it to the Buyers. (Rec. Doc. 44, ¶28).

- Nicol Hannie was in charge of preparing Person-Centered Service Plans (PCSP) for each resident. This document assessed each resident's ability to self-administer. (Rec. Doc. 44, ¶29).

- Nicol Hannie provided a document entitled "Functional Criteria for Assisted Living," which set forth that residents must "be able to self-administer medications." (Rec. Doc. 44, ¶30).

- Buyers removed Nicol Hannie as Executive Director of Rosewood on January 31, 2017. Thereafter, he "was no longer in a position to obscure the fact that there were many Rosewood residents for whom self-administration of medication was inappropriate…" (Rec. Doc. 44, ¶32).

- When Rosewood employees raised their concerns about the administration of medications, Nicol Hannie told the employees that their employment would be terminated if they did not administer the medications to all residents as instructed. (Rec. Doc. 44, ¶43).

The Court now considers whether the Buyers have stated a viable claim for fraud against the Seller entities, HDI and CC, and Nicol Hannie. The Court hereby adopts its previously discussed law applicable to Rule 12(b)(6) Motions to Dismiss, as stated at Rec. Doc. 33, p.4-6 (adopted by Rec. Doc. 38).

## I.     Classification of the Buyers' Fraud Claims.

In ruling on the Sellers' first Motion to Dismiss, the Court held that the Buyers had at least stated a claim for negligent misrepresentation. However, because the Sellers had only challenged the Complaint on the grounds of reasonable reliance (an element of both negligent and intentional misrepresentation claims), the Court explicitly did not address whether the Buyers' Complaint stated a claim for intentional misrepresentation. (Rec. Doc. 33, p. 10-14, and footnote 6). Subsequent to the Court's previous ruling, the Sellers argued for the first time in reply to the Buyers' Opposition to the Sellers' Motion to Dismiss the Amended Complaint that negligent misrepresentation claims had been adjudicated in the arbitration. (Rec. Doc. 64). Supporting the Sellers' contentions is the arbitrator's order, quoted above, which severed only the "claim for intentional misrepresentation, or in other words, fraud." Docket No. 6:19-cv-00833, Rec. Doc. 1-8, p. 4.[2] Accordingly, although the

---

[2]  The Court is permitted to consider matters of public record when ruling upon a Rule 12(b)(6) Motion. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The parties also agreed at the October 10, 2019 hearing that the Court may permissibly consider the arbitration rulings in this matter.

parties' pleadings have been somewhat ambiguous as to the precise classification of the Buyers' claim, the Court finds that the only claim before the Court is whether the Amended Complaint states a claim for intentional misrepresentation, or fraud.

Under Louisiana law, an action for fraud against a party to a contract requires: (1) "a misrepresentation, suppression, or omission of true information;" (2) "the intent to obtain an unjust advantage or to cause damage or inconvenience to another;" and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the contract. *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.,* 689 F.3d 380, 388 (5th Cir.2012), citing *Shelton v. Standard/700 Assocs.,* 798 So.2d 60, 64 (La.2001).

Similarly, when the defendant was not a party to the contract, the plaintiff must plead facts showing that the defendant possessed an intent to deceive: "The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 627 (5th Cir. 1999).

Rule 9(b) mandates that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false

representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir. 1997), citing *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994).

"Rule 9(b) is satisfied where a plaintiff has alleged "[t]he basic framework, procedures, (and) nature of the fraudulent scheme, (as well as) the financial arrangements and inducements among the parties ... that give rise to (the) belief that fraud has occurred with the requisite specificity to generate a strong inference of [fraudulent intent]." *Medve Energy Ventures LLC v. Warhorse Oil & Gas LLC,* No. 6:17-CV-01336, 2018 WL 7051038, at *6 (W.D. La. Nov. 21, 2018), *report and recommendation adopted,* No. 6:17-CV-01336, 2019 WL 303122 (W.D. La. Jan. 17, 2019), quoting *U.S. ex rel. Hebert v. Dizney,* 295 F. App'x 717, 723 (5th Cir.2008), and *7-Eleven Inc. v. Puerto Rico-7 Inc.*, 2008 WL 4951502, at *5 (N.D. Tex.2008).

## II.  **Whether the Buyers have stated a claim for intentional fraud.**

### A. **The Sellers' re-urged due diligence argument.**

The Sellers again rely upon the reasonableness of the Buyers' reliance as grounds for dismissal. They contend that the Buyers were unreasonable in relying upon the post-closing staffing levels, because the APA's stated that the Sellers were to terminate all employees prior to closing, and that the Buyers had no obligation to hire former employees. (Rec. Doc. 53-1, citing Rec. Doc. 1-2 and 1-3, ¶9.1). The

Buyers counter that, while no employees "technically" carried over with the closing, they relied upon the Sellers' pre-closing payroll and staffing information to formulate cost projections, assuming the facilities could be staffed at the same levels, while also being in compliance with the laws. (Rec. Doc. 62, at p.15-17). The Sellers' new theory of the Buyers' unreasonable reliance does not upset the Court's previous ruling that, generally, the reasonableness of the Buyers' reliance cannot be adjudicated at this stage of the proceedings. However, whether the Buyers' reliance was reasonable is not the determinative inquiry, given this Court's ruling that the Buyers' only claim at issue is for intentional misrepresentation.

### B. Whether the Amended Complaint alleges sufficient facts to show fraud.

The Sellers next seek to dismiss the Amended Complaint based upon regulations applicable to medication self-administration in assisted living facilities. (Rec. Doc. 53-1, at p.12-16). This argument addresses the merits of whether the facilities were actually in compliance with the applicable regulations. The Sellers argue that the requirement for qualified nursing staff to administer medication to those who were incapable of self-administration was optional under the regulations, citing LAC48:6841(B)(1)(a) and LAC 48:6483(C)(3)(a), *inter alia*. Thus, the Sellers submit, the Buyers had the option of choosing to hire nurses for medication or for evicting the residents who were incapable of self-administration. The Buyers counter that the Sellers represented that Rosewood was in compliance with the laws by

11

representing that all residents were capable of self-medication, when they actually failed to qualify for self-administration under the regulations. (Rec. Doc. 62, p. 17-18).

The Sellers' position that staff-administration of medication was optional, such that the Buyers were not required to hire licensed nursing staff, is supported by the applicable regulations. La. Admin. Code, Title 48, Chapter 68, §6843(C) identifies four levels of administration, including 1) self-administration (which states that resident appropriate for this level of service will be aware of what the medication is, what it is for, and the need for it); 2) assistance with self-administration (which may be provided by staff without professional licensure, and if it is a service offered by the ARCP[3]); 3) staff-administration of medication (identified as an optional level of administration for all levels of ARCPs, and which requires that medications under this level be administered only by an appropriately licensed individual, such as a doctor, RN, or LPN); and 4) contracted third party administration (whereby the ARCP, the resident, or his representative may contract with an appropriately licensed third-party for medication administration).

The Buyers contend that the residents they inherited with the sale did not qualify for the level of self-administration under which Rosewood was operating,

---

[3] Chapter 68 refers to facilities such as Rosewood and Cedar Crest as Adult Residential Care Providers, or ARCP.

12

because they did not sufficiently understand their medications. The Buyers point to Chapter 68, §6835(A)(2), which states: "If the resident's person-centered service plan ["PCSP"] includes staff administration of medication…the assessment for those services shall be completed by a registered nurse." Since neither Rosewood nor Cedar Crest was required under §6843 to implement staff-administration of medication, the root of the Buyers' argument is that the non-qualifying residents' PCSPs failed to adequately identify whether those residents understood their medications (in which case an RN or other appropriately licensed staff would be needed).

The Amended Complaint states that Nicol Hannie was the individual in charge of preparing the PCSPs for each Rosewood resident, and that Nicol Hannie provided the Rosewood manual to the Buyers which stated that a resident must be able to self-administer medications in order to be eligible to reside at Rosewood. (Rec. Doc. 44, ¶29-30). Otherwise, the Amended Complaint alleges conclusory allegations such as that Nicol Hannie "obscure[d] the fact…," and "knew but intentionally hid the fact[s] of Rosewood's non-compliance and Cedar Crest's understaffing." (Rec. Doc. 44; ¶32; 67-68). These conclusory allegations do not withstand Rule 9(b) scrutiny. The Amended Complaint does not allege any particular facts tending to show that Nicol Hannie intentionally prepared the PCSP's improperly for the purpose of misleading the Buyers to believe that self-administration was appropriate. There are

13

no facts relative to the timeframe in which Nicol Hannie allegedly prepared any offending PCSPs, or whether these were done during the time that the Buyers were potential buyers. Stated differently, if the Buyers were not yet involved, Nicol Hannie could not have had the intent to deceive them by preparing improper PCSPs. Thus, the Court finds that the Buyers failed to state a claim for intentional misrepresentation against Nicol Hannie. Likewise, as discussed in the Court's prior Report and Recommendation, a claim for fraud against the entities, HDI and CC, cannot prevail in this case absent shareholder fraud. (See discussion at Rec. Doc. 32, p.17-19). Hence, the Court finds that the Amended Complaint does not state a claim for intentional misrepresentation (i.e. fraud) against the Sellers.

## **Conclusion**

For the reasons discussed herein, it is recommended that the 12(b)(6) Motion to Dismiss and Motion for Summary Judgment (Rec. Doc. 53) filed by Hannie Development, Inc. and Cedar Crest, LLC be GRANTED, and that all claims against the Sellers be dismissed. It is further recommended that the Motion to Dismiss filed by Nicol Hannie (Rec. Doc. 54) be GRANTED and that all claims against him be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of

Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 18th day of October, 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE